UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BESS,<br><br>        Plaintiff,<br><br>    v.<br><br>J. PEFFLEY,<br><br>        Defendant. | Case No. 22-cv-00341-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; GRANTING MOTION TO FILE SUR-REPLY; STAYING AND REFERRING CASE TO PRO SE MEDIATION PROGRAM**<br><br>Re: Dkt. Nos. 22, 29 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding without attorney representation, filed this civil rights complaint under 42 U.S.C. § 1983 against Defendant J. Peffley, who was a Sergeant at the California Training Facility ("CTF") at the time of the events giving rise to this case. Defendant filed a motion for summary judgment, Plaintiff filed an opposition, and Defendant filed a reply brief. Plaintiff recently filed a motion for leave to file a sur-reply, which is GRANTED. For the reasons discussed below, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The case is referred to the Court's Prisoner Mediation Program and STAYED for the duration of the mediation proceedings except as provided below.

## BACKGROUND

The following facts are not in dispute unless otherwise noted.

As of January 2019, Plaintiff had received the lowest available "threat-assessment" score of -22, completed self-help courses, and performed above-average work at his job assignment.

(ECF No. 1 at 5, 15.)[1]  He "distanced" himself from "Security Threat Groups" ("STG") activity,[2] as evidenced by CTF officials' decision, on October 28, 2019, to remove him from CTF's "modified program."  (*Id.*)[3]

On February 4, 2021, Defendant, who was a Sergeant in the Institutional Services Unit ("ISU") at CTF, searched Plaintiff's cell.  (ECF No. 25-3 at 148.)  Plaintiff states Defendant found no contraband, whereas Defendant states he found two altered state-issued tablets and prohibited cellphone accessories.  (*Compare id. and* ECF No. 22-4 at 2, 4.)  Defendant wrote a receipt following the search stating he found these items, as well as "EME STG written materials."  (ECF No. 22-4 at 4.)  Plaintiff did not receive a Rules Violations Report ("RVR") for possessing contraband or altering state property.  (ECF No. 25-3 at 148.)

Defendant asked Plaintiff to inform him about several STG groups in the presence of other inmates; if Plaintiff had said yes, he would have been a "snitch" and in serious risk of harm from other inmates.  (*Id.*)  Plaintiff declined and told Defendant he would submit an administrative grievance complaining about Defendant asking him to "snitch" because of the danger that posed.  (*Id.*)  Defendant responded by telling him he "could write too," he would "validate" Plaintiff (i.e. find him to be involved with an STG), and he would inform other inmates Plaintiff is a "snitch."  (*Id.*)  Defendant also told Plaintiff he knew Plaintiff had an upcoming parole hearing (in June 2021), and would add confidential reports in Plaintiff's file indicating Plaintiff had STG involvement to prevent Plaintiff from obtaining release.  (*Id.*)  In his declaration, Defendant does not address any verbal exchange he had with Plaintiff or Plaintiff's cellmate other than that he asked them to leave the cell before the search.  (ECF No. 22-4.)  Two other officials who were ISU officers at the time (but are not defendants), Barron and Mora, as well as Plaintiff's cellmate, were present during the search.  (ECF No. 25-3 at 148-49.)  They submit declarations, but do not address whether they heard a verbal exchange between Plaintiff and Defendant.  (*Id.* at 73, 148;

---

[1] Plaintiff's complaint is verified (ECF No. 1 at 14); as such, it may be considered an opposing affidavit to the extent it sets forth admissible facts within Plaintiff's knowledge, *see Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  .
[2] It is undisputed prison rules prohibit STG membership or participation.
[3] Plaintiff asserts that decision required a finding of no STG involvement for at least five years (ECF No. 25-1 at 6), but he does not present evidence to support this assertion.

2

ECF Nos. 22-1, 22-2.) Plaintiff's cellmate states Defendant told him Plaintiff was a "snitch," and thereafter he moved to another cell. (ECF No. 25-3 at 73.)

On February 8 and 10, 2021, two memoranda appeared in Plaintiff's "C-file" (his central prison file) indicating confidential information identified him as an "associate/member" of an STG for whom he was performing illicit commercial activities, he had contraband, and he had "altered/destroyed" state property. (ECF No. 25-3 at 7.) Defendant denies any involvement in writing these memoranda or otherwise being involved in placing them in Plaintiff's file. (ECF No. 22-4.) Barron and Mora state they and other officials, but not Defendant, participated in preparing, approving, and filing the memoranda. (ECF Nos. 22-1, 22-2.)

Plaintiff asserts it was "common knowledge" CTF ISU officers covered for each other's practices in falsely identifying inmates as informants or as involved with STGs (*id.*), and he includes declarations by other inmates stating they were aware of and had experienced these practices by CTF ISU officers, including Barron, Mora, and Defendant (*id.* at 74-75, 81-82, 84-86).

Plaintiff discovered the two February 2021 confidential memoranda on April 8, 2021, when he reviewed his C-file and received a notice these memoranda were sent to the parole board in advance of his parole hearing in June 2021. (ECF No. 25-3 at 7-8, 149.) That same day he also learned about a third confidential memorandum dated September 25, 2017, implicating him in STG activity that was also sent to the parole board. (ECF No. 25-3 at 8.) The September 2017 memorandum and nine additional confidential informant reports from 1999-2002 of his STG involvement were put into his file on January 15, 2021. (*Id.* at 9.)

Plaintiff filed an administrative grievance (Log No. 107274) against Defendant on April 11, 2021, complaining about Defendant's actions on February 4, 2021, and about the inclusion of the confidential memoranda in his file. (*Id.* at 3-6, 149.) He did not file it earlier because he was afraid Defendant would follow through on his threats to publicly label him a "snitch" and/or place false reports in his records of his involvement with an STG. (*Id.* at 149.) The grievance was denied at the first level of review on May 13, 2021. (*Id.* at 11-13.) Plaintiff appealed to the second level of review on May 25, 2021. (*Id.* at 14-15.) He received a response on September 30,

2022, stating "time expired" (because the time for officials to respond to the appeal (60 days), *see* 15 Cal. Code Regs. § 3485(g), had expired), and Plaintiff did not need to pursue any further administrative remedies. (*Id.* at 36-37.)

Plaintiff states the 2020 changes to the prison grievance process, *see* 15 Cal. Code Regs. §§ 3480 et seq. (2022), were not available to him in April 2021 because, due to restrictions related to the COVID pandemic, he was not able to access the law library at the time and had not been informed of the new procedures. (ECF No. 25-3 at 149.)

## DISCUSSION

I.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Exhaustion must ordinarily be decided by a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most

4

favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166.

II. Analysis

    1. Claims

Plaintiff brings two claims. First, Defendant tried to "force" Plaintiff to be a "snitch" about STG members and activity—which would have put Plaintiff at great risk of harm by other inmates—by threatening him, and then Defendant retaliated against him when he refused to comply. (ECF No. 1 at 9.) Second, Defendant retaliated against him because he "verbally expressed his desire" to file a grievance against Defendant for trying to force him to be a "snitch." (ECF No. 1 at 10-11.) These claims implicate Plaintiff's Eighth Amendment right to be free from an excessive risk of harm from other prisoners, *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994),[4] and his First Amendment right to exercise his constitutional rights without retaliation, *see Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

    2. Exhaustion

Defendant argues Plaintiff has not exhausted his administrative remedies on his Eighth Amendment claim. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action,

---

[4] That Plaintiff refused to become a "snitch" and thus did not actually experience the danger that entailed does not absolve Defendant from Eighth Amendment liability for trying to force him to do so; a prisoner need not wait until he is actually endangered and harmed to state a claim that his Eighth Amendment rights were violated. *See Farmer*, 511 U.S. at 845; *Gonzalez v. CDCR*, 739 F.3d 1226, 1235 (9th Cir. 2014) (finding standing to bring Eighth Amendment challenge to prison's "debriefing" process of requiring prisoners to inform officials of gang activity, even though the plaintiff had not yet been debriefed, where the plaintiff alleged risk of retaliation from other gang members). Defendant does not argue otherwise in his motion except to argue that this law was not "clearly established" for purposes of qualified immunity; that argument is addressed below.

condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." 15 Cal. Code Regs. § 3481(a). There are two levels of review for non-health-care appeals by inmates. At the first level, the inmate submits a grievance on form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See id.* at § 3482(a),(c). The inmate must file this grievance within 60 days of discovering the adverse action. *Id.* at § 3482(b)(1). "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a), 3484. At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at first level, submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento describing "in detail why the decision provided by the Institutional or Regional Office of Grievances is inadequate." *Id.* at §§ 3481(a), 3484(a),(c). The inmate has 60 days to file the appeal. *Id.* at § 3484(b). In response, "a claimant shall receive a written decision" from the Office of Appeals "clearly explaining the reasoning for the decision in each claim." *Id.* at § 3481(a), 3485. The Office of Appeals has 60 days to provide a written response. *Id.* at § 3485(g). An Office of Appeals decision of "denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired" constitutes exhaustion of available administrative CDCR remedies. *Id.* at § 3485(k)(1).

Defendant does not dispute Plaintiff filed an administrative grievance regarding Defendant, Log No. 107274, and exhausted it. Rather, Defendant argues this grievance did not include Plaintiff's Eighth Amendment claim and therefore Plaintiff did not exhaust it. (Defendant does not argue Plaintiff did not exhaust his retaliation claim.)

Administrative remedies are not exhausted where the grievance, liberally construed, does not have the same subject and same request for relief as the prisoner's federal claim. *See, e.g., Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010); *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1061 (9th Cir. 2007). Moreover, the PLRA exhaustion requirement requires "proper exhaustion," which means compliance with prison grievance procedures such that the level of detail necessary in a grievance to exhaust a claim is determined by the prison's grievance requirements, not the PLRA. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (holding that because

the Michigan Department of Corrections' administrative grievance procedures made no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion was unwarranted). California prison regulations require the inmate to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge." 15 Cal. Code Regs. § 3482(c)(2). Neither the California regulations nor the PLRA require a grievance to include legal terminology or legal theories unless necessary to provide notice of the harm being grieved,, however nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *See id.*; *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). The purpose of a grievance is to alert the prison to a problem and facilitate its resolution. *Id.*

Plaintiff's Eighth Amendment claim states, in relevant part:

> Defendant PEFFLEY knowingly, deliberately, callously, and recklessly disregarded substantial risks to PLAINTIFF's safety when he attempted to force PLAINTIFF into becoming a "snitch," then retaliated against him when he refused.

(ECF No. 1 at 9.) In the grievance, Plaintiff stated:

> I went to an Olsen review on April 8, 2021, and was made aware of several confidential information [sic] documented in my central file Sergeant J. Peffley. [Sgt] Peffley searched my cell on 02-04-21, and after searching my cell, requested that I provide information to him concerning inmates on the CTF-C yard, who are engaging in illicit activities. I told J. Peffley that I was going to 602 him for attempting to have me give him information on other inmates. J. Peffley told me, he knows how to write also, he will validate me, he will put [a] couple [of] confidential[ memoranda] in my C-File, and that he knew I had a [parole hearing] on June 4, 2021, and that his confidential[ memoranda] would mess up my chance for parole. I contend[] J. Peffley followed through with his threat and fabricated numerous confidential information against me, as the memorandum dated April 6, 2021, reflects.

(*Id.* at 17, 19.)

The grievance included the information required by the CDCR regulations to adequately notify prison officials of Plaintiff's Eighth Amendment claim, namely Defendant tried to force him into the dangerous role of a "snitch" by threatening him with harm if he did not comply. As required by 15 Cal. Code Regs. § 3482(c)(2), the grievance identified Defendant by name and title

and provided the date of his alleged misconduct. In describing Defendant's actions that underly his Eighth Amendment claim here, the grievance recounted how Defendant sought to put him in danger, i.e. by asking him to "provide information" about inmates on his yard who were engaged in "illicit activities," and, when Plaintiff refused, trying to force his hand by threatening to validate him as an STG member and to place damaging memoranda in his file to ruin his chances for parole at his upcoming hearing. (*Id.*) The grievance also alleged Defendant followed through on the threat to put the damaging memoranda in his file. (*Id.*) Plaintiff did not need to mention the Eighth Amendment or use the specific terms "deliberate indifference" to "an excessive risk of harm" to exhaust the claim. *See Griffin*, 557 F.3d at 1120. He included sufficient information to comply with the regulation and put officials on notice Defendant had tried to force him into the dangerous position of becoming a "snitch" by threatening to cause him significant harm if he did not comply. That is Plaintiff's Eighth Amendment claim.

Defendant argues the grievance was inadequate because it did not include one of the Defendant's alleged threats, namely that he would publicly (and falsely) reveal Plaintiff was a "snitch." The Complaint alleges Defendant threatened to: (1) place false records in his prison file that he was involved in an STG to ruin his chances at his upcoming parole hearing (ECF No. 1 at 5 at ¶ 4; 6-7 at ¶¶ 11-12; 9 at ¶ 24); (2) falsely label Plaintiff a "snitch" to the general prison population (*id.* at 5 at ¶ 4; 9 at ¶ 24); and (3) falsely "validate" him as an STG member (*id.* at 6 ¶ 11). Simply omitting one of three *ways* Defendant threatened Plaintiff does not mean the grievance did not adequately present the claim that Defendant threatened him. (ECF No. 25-3 at 148-49.) Plaintiff complained when, where, and how Defendant tried to endanger him, and included two of the three ways Defendant threatened him. This was more than sufficient to comply with the regulations and put officials on notice of his Eighth Amendment claim.

The Court finds the record of Plaintiff's grievance shows he exhausted his Eighth Amendment claim that Defendant tried to force him into dangerous position of being a "snitch" by threatening to cause him serious harm if he did not comply.[5]

---

[5] In light of this conclusion, the Court need not address Plaintiff's alternative argument that the prison administrative grievance system was not available to him.

8

3. <u>Retaliation</u>

Defendant argues there are no triable issues of fact regarding Plaintiff's First Amendment retaliation claim. Plaintiff claims Defendant threatened to spread false information that he was a "snitch," validate him as an STG member, and place the false memoranda in his files in retaliation for (1) refusing to be a "snitch," and (2) for saying that he would file a grievance against Defendant. (ECF No. 1 at 5 ¶ 4, at 6 ¶ 11, at 7 ¶¶ 12-14, at 9 ¶¶ 24-25, 27, and "Count One", at 10 "Count Two," at 11 ¶ 31.) "Within the prison context, a viable First Amendment retaliation claim entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Defendant argues there are no triable issues on several elements of a viable retaliation claim.

First, Defendant insists there is no evidence Defendant took adverse action against Plaintiff. To constitute adverse action, harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient, including the mere threat of harm. *Shepard v. Quillen*, 840 F.3d 686, 688-90, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (placement in administrative segregation or even threat do so on its own amounts to adverse action satisfying the first element). Here, Plaintiff's declaration supports a finding Defendant threatened to spread information that Plaintiff was a snitch among the prison population, validate him as an STG member, and put false confidential memoranda in Plaintiff's central file that Plaintiff was involved in STG activity to prevent Plaintiff from being granted parole. (ECF No. 25-3 at 148.) These threats, each on their own, support a finding of an adverse action under *Shephard* sufficient to support a retaliation claim.

Defendant's reliance his own declaration and the declarations of Barron and Mora to show there is no dispute he was not involved in the memoranda ultimately appearing in Plaintiff's C-File is not persuasive. (ECF Nos. 22-1 at ¶¶ 18-20, 22-2 at ¶¶ 14-16, 22-4 at ¶¶ 10-12.) First, this evidence does not negate the evidence of the verbal threats. Second, there is circumstantial conflicting evidence indicating Defendant was involved: Defendant threatened to put the

9

memoranda in Plaintiff's file (ECF No. 25-3 at 148) where they appeared only a few days later (ECF No. 1 at 21), and there are declarations from other inmates that Defendant, Barron, Mora and ISU guards falsified reports to cover each other (ECF No. 25-3 at 74-75, 81-82, 84-86).  A reasonable trier of fact could determine Defendant threatened Plaintiff and was involved in the memoranda appearing in Plaintiff's C-File, either of which would be sufficient to show Defendant took adverse action for purposes of a retaliation claim.

As to the causation element, a plaintiff must show the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to some other reason.  *Shephard*, 840 F.3d at 689-91.  Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, prison official's expressed opposition to the speech, and the prison official's proffered reason for the adverse action was false or pretextual.  *See id.* at 690.  Plaintiff states in his declaration Defendant threatened him with adverse action immediately after and in response to Plaintiff's statement that he would file a grievance against Defendant.  A rational trier of fact could conclude based upon this fact alone that the threats were caused by Plaintiff's stated intent to file a grievance.  There is also a triable issue as to whether the confidential memoranda in Plaintiff's file was also caused by Plaintiff's statements to Defendant.  The confidential memoranda appeared in Plaintiff's file within four and six days, respectively, of the verbal exchange between him and Defendant.  (ECF No. 1 at 21; 25-3 at 148.)  Further, according to Plaintiff, when he told Defendant he would write a grievance, Defendant responded that he "could write *too*," (ECF No. 25-3 at 148) (emphasis added), which can reasonably be interpreted as stating he would write the confidential memoranda *because* Plaintiff intended to write a grievance.  The timing and content of Defendant's threats and subsequent appearance of memoranda in Plaintiff's file are sufficient for a rational fact-finder to conclude Defendant's adverse action was caused by Plaintiff's protected conduct.

Defendant also argues there is no evidence Plaintiff engaged in protected conduct. Plaintiff claims Defendant retaliated against him for: (1) refusing to become a "snitch," and (2) for expressing his intent to file a grievance.  (ECF No. 1 at 9 ("Count 1"), 10 ("Count 2"); No. 25-3 at 148.)  As for Plaintiff's first retaliation theory, refusing to "snitch" does not appear to be protected

10

conduct for a retaliation claim. The Ninth Circuit has held, in a matter involving an alleged vindictive prosecution, "there is no constitutional right not to snitch." *Paguio v. Acosta*, 114 F.3d 928, 930 (9th Cir. 1997) (citing *United States v. Gardner*, 611 F.2d 770, 773 (9th Cir. 1990)). Plaintiff cites no cases, and the Court is not aware of any, holding that declining to "snitch" is protected conduct for a retaliation claim. Consequently, the Court concludes Plaintiff's retaliation claim cannot be based upon his refusal to "snitch".

However, Plaintiff's second retaliation theory—stating he wanted to file a grievance against Defendant—is protected conduct for purposes of a retaliation claim. Prisoners may not be retaliated against for exercising their right of access to the courts, *see Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995), which includes using prison grievance procedures, *Rhodes*, 408 F.3d at 567. The Ninth Circuit has further held a prisoner cannot be retaliated against for expressing an intent to access the courts because such expressions "fall within the purview of the constitutionally protected right to file grievances." *Entler v. Gregoire*, 872 F.3d 1031, 1034, 1038-40 (9th Cir. 2017) (holding district court erred in finding prisoner did not state a First Amendment retaliation claim for prison's disciplinary actions against him for making threats of filing legal action if his grievances were not addressed). Consequently, a triable issue exists as to whether Defendant retaliated against Plaintiff for his protected activity, namely expressing his intent to file a grievance against Defendant.

Defendant does not dispute there is a triable issue as to whether there was a chilling effect from Defendant's threats and placement of the confidential memoranda in Plaintiff's file. *See Rhodes*, 408 F.3d at 567-68 n.11 (harm that is more than minimal will almost always have a chilling effect).

Defendant argues, however, the retaliation claim fails because it is undisputed that filing the confidential memoranda served the legitimate penological purpose of preserving the safety of the prison by documenting reliable information about illicit or STG activity. This argument ignores the evidence that the confidential memoranda were fabricated out of retaliatory animus. Plaintiff's own declaration that he is not involved in STG activity and the evidence that he was removed from modified programs for STG members create a triable issue as to whether the

11

memoranda are false. If false, there was no legitimate penological purpose served by filing them.

For the reasons explained above, Defendant is entitled to summary judgment on Plaintiff's retaliation claim to the extent it is premised on the alleged protective activity of refusing to snitch. Summary judgment is denied to the extent the claim is based on the alleged protective activity of Plaintiff's expressed intent to file a grievance. As to that theory, all of the elements of Plaintiff's retaliation claim present triable factual questions or (in the case of chilling effect) are undisputed.

### 4. Qualified Immunity

Defendant next argues he is entitled to qualified immunity on Plaintiff's claims. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* at 236.

Defendant argues he is entitled to qualified immunity on Plaintiff's retaliation claim because there is no clearly established law that refusing to "snitch" is constitutionally protected conduct. (ECF No. 22-1 at 22:28-23:7.) The Court need not address this argument because, as discussed above, the Court has already concluded Plaintiff's refusal to "snitch" was not protected conduct that can form the basis of a First Amendment retaliation claim, *see Paguio*, 114 F.3d at 930, and therefore Defendant is entitled to summary judgment on this theory of his retaliation claim. As further explained above, however, Plaintiff also claims Defendant retaliated against him for expressing an intent to file an administrative grievance, and there are triable issues on this claim. (ECF No. 1 at 10-11.) Defendant does not argue he is entitled to qualified immunity on this theory of the retaliation claim, and therefore it remains. (ECF No. 22 at 22-23.)

Defendant also argues he is entitled to qualified immunity on Plaintiff's Eighth Amendment claim. To begin with, Defendant mischaracterizes this claim as Plaintiff claiming "Peffley endangered him by telling his cell-mate that he was a 'snitch.'" (*Id.* at 24:4-5.) That is not Plaintiff's claim; nowhere in the Complaint does Plaintiff allege Defendant told his cell-mate

12

or other inmates he was a snitch, let alone claim Defendant violated his constitutional rights in this way. (*See id.* at 5-11; *see, e.g., id.* at 5 at ¶ 4; 9 at ¶ 24 (claiming Defendant *threatened* to tell other inmates Plaintiff was a snitch)).[6] Plaintiff's Eighth Amendment claim is that Defendant tried to force Plaintiff into the dangerous position of being a snitch by threatening Plaintiff if he refused. (ECF No. 1 at 9-10.) Moreover, although Plaintiff's refusal to snitch is not protected by the First Amendment, *see Paguio*, 114 F.3d at 930, if Defendant tried to force Plaintiff into becoming a snitch by threatening him for refusing, as Plaintiff claims, then Defendant acted with "deliberate indifference to a substantial risk of serious harm" to Plaintiff by another inmate in violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 833-34; *Gonzalez v. CDCR*, 739 F.3d 1226, 1235 (9th Cir. 2014) (identifying the "risk of retaliation" by other inmates that "inheres in becoming an 'informant'" as an injury-in-fact under the Eighth Amendment).

Defendant argues the law was not clearly established that Defendant's conduct in this case implicated the Eighth Amendment because a threat to Plaintiff's safety "never materialized." (ECF No. 22 at 24.) As a general matter, a prisoner need not wait until he is actually assaulted or harmed to state a claim and obtain relief; deliberate indifference to a substantial *risk* of harm is sufficient. *Farmer*, 511 U.S. at 842, 845 (emphasis added). In *Gonzalez*, the Ninth Circuit concluded the alleged risk from snitching sufficiently materialized under the Eighth Amendment when prison officials applied pressure upon the prisoner-plaintiff to become a snitch via California's prisoner debriefing procedures. *See* 739 F.3d at 1235. The plaintiff claimed the debriefing procedures in which a prisoner could either inform on gang members or remain in indeterminate segregation violated the Eighth Amendment. *Id.* at 1229 & n.1. The court concluded the plaintiff had standing to bring an Eighth Amendment claim, which requires showing injury-in-fact. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).[7] Although the plaintiff had not snitched, officials had not labeled him a snitch, and other inmates

---

[6] While Plaintiff states in his opposition declaration that Defendant did in fact follow through on that threat by telling Plaintiff's cellmate Plaintiff was a "snitch" (ECF No. 25-3 at 73, 148), that is not part of the claim he makes in the Complaint (ECF No. 1 at 9-10).

[7] Defendants argued the plaintiff did not have standing to challenge the debriefing procedure because he denied being a gang member and therefore claimed he could not become an informant. *Id.* at 1235.

13

had not threatened him for snitching, the court concluded his circumstances, in which prison procedures pressured him to become a snitch, sufficiently materialized a risk of harm to him that he had an injury-in-fact sufficient to have standing to make an Eighth Amendment claim. *See id.*

Plaintiff's claim similarly sets forth a sufficiently materialized threat of danger to implicate his Eighth Amendment rights. Prison officials in *Gonzalez* presented the plaintiff with a choice to either endanger himself by becoming a snitch or face a significant harmful consequence, i.e. indefinite segregation. *See id.* at 1229 & n.1. Here, Plaintiff claims Defendant presented him with a similar choice to either endanger himself by becoming a snitch or face the significant harm of being falsely validated an STG member, being denied parole, and having a false rumor spread that he was a snitch. In both cases, a prisoner experienced coercive pressure to accept the substantial risk of serious harm that comes with being a snitch and, if he refused, he would suffer other significantly harmful consequences. *Gonzalez* clearly established five years before Defendant's alleged conduct in this case that applying such pressure constitutes deliberate indifference to a substantial risk of serious harm to a prisoner within the meaning of the Eighth Amendment. Consequently, a reasonable prison official in Defendant's position would know pressuring Plaintiff to snitch by threatening him with significant harm if he refused (and later carrying out those threats against him when he did refuse) was prohibited by the Eighth Amendment.

Defendant argues *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989), provides otherwise. In that case, the court found a cognizable Eighth Amendment claim based upon allegations officials had spread a false rumor that the plaintiff was a snitch and other inmates had then threatened to harm him. *Id.* at 1138. Here, Plaintiff's circumstances were somewhat different in that he does not claim Defendant had spread the snitch rumor or that other inmates had threatened him. *Valandingham* did not, however, limit the Eighth Amendment to the facts of its case, or hold that it only applies if the prisoner's snitch status has already been disseminated across the prison population and/or inmates have already threatened to assault him.[8] *See id.* As discussed above, in *Gonzalez,* the plaintiff had not yet actually snitched, been labeled as such, or

---

[8] No authority cited by Defendant (see below) or of which the Court is aware imposes such a limitation on Eighth Amendment claims.

been threatened by other inmates, but the danger to him from the coercive pressure by prison officials to become a snitch was a sufficiently materialized threat to his safety to implicate his Eighth Amendment rights. Consequently, the differences between *Valandingham* and this case do not preclude concluding the law was sufficiently clear for a reasonable official to know Defendant's alleged conduct would violate the Eighth Amendment.

Defendant cites a number of unpublished district court decisions for the proposition that the allegations here do not involve a sufficiently materialized harm to implicate the Eighth Amendment. These decisions are not controlling, nor are they persuasive. Three did not involve snitching at all, but rather allegations that a prison official verbally harassed or insulted a prisoner. *See Garza v. Salinas Valley State Prison*, No. CV 10-7658-VBF MAN, 2010 WL 5088738, at *2 (C.D. Cal. Dec. 8, 2010) (concluding that an official calling a plaintiff unspecified "names" insufficient because plaintiff did not state "what the 'names' were, in what manner they endangered his safety, and whether the risk to his safety ever materialized") (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (directing vulgar language at an inmate does not state a constitutional claim)); *Pryor v. SF City & Cnty.*, No. C -12-02696 (EDL), 2013 WL 12199455, at *8 (N.D. Cal. Sept. 19, 2013) (verbal harassment of the plaintiff for being transgender, without more, does not violate the Eighth Amendment); *Martinez v. Brewer*, 2015 WL 1306413 at *5 (N.D. Cal. Mar. 23, 2015) (holding it was too speculative to assert that official referring to Plaintiff as "gay" on two occasions in presence of other inmates created danger). These cases are distinguishable because here the claim is not that Defendant verbally harassed or insulted Plaintiff, but rather that he tried to force Plaintiff into the inherently dangerous position of becoming a snitch. The two other decisions did not address the Eighth Amendment, but rather retaliation claims under the First Amendment. *See Adams v. Tilton*, 2009 WL 2915100, *12-13 (E.D. Cal. 2009) (holding that being labeled a child molester insufficient to support retaliation claim); *Berry v. Metcalfe*, 2011 WL 1100134 at *4 (N.D. Cal. Mar. 24, 2011) (concluding accusations of snitching on guards, as opposed to snitching on inmates, insufficient to support retaliation claim). As these decisions either did not address snitching or did not address the Eighth Amendment, they do not support concluding that Defendant is entitled to qualified immunity on Plaintiff's Eighth

Amendment claim.

For the reasons discussed above, Defendant's qualified immunity argument on Plaintiff's Eighth Amendment claim also fails.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. As explained in detail above, summary judgment is GRANTED on a portion of Plaintiff's First Amendment retaliation claim; summary judgment is DENIED on Plaintiff's remaining claims. Good cause appearing, Plaintiff motion to file a sur-reply is GRANTED.

As summary judgment has been denied in part, and prior to setting pre-trial and trial dates, the Court finds good cause to REFER this case to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case are STAYED until further order, with the exception of any proceedings related to the mediation. The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential, and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The Clerk shall send a copy of this order to Magistrate Judge Illman.

This order disposes of docket numbers 22 and 26.

**IT IS SO ORDERED.**

Dated: August 2, 2023

JACQUELINE SCOTT CORLEY
United States District Judge