1

2

3                 UNITED STATES DISTRICT COURT

4               NORTHERN DISTRICT OF CALIFORNIA

5

6    DANIEL BESS,                          Case No. 3:22-cv-00341-JSC

7                    Plaintiff,
                                           **ORDER RE: DEFENDANT'S SECOND**
8          v.                              **MOTION FOR SUMMARY**
                                           **JUDGMENT**
9    J. PEFFLEY,
                                           Re: Dkt. No. 129
10                   Defendant.

11

12         Daniel Bess brings Section 1983 claims against correctional officer J. Peffley alleging

13   Peffley violated his First and Eighth Amendment rights when he (1) threatened to label Bess as a

14   snitch and falsely validate him as a gang member unless he provided information on the Mexican

15   Mafia, and (2) falsified confidential memoranda in Bess's file after Bess threatened to file an

16   administrative grievance.  The Court previously granted in part and denied in part Defendant's

17   motion for summary judgment.  (Dkt. No. 30.[1])  The Court allowed Defendant to bring a second

18   motion for summary judgment because Plaintiff did not oppose Defendant's request.  (Dkt. No.

19   120.)  That motion is now fully briefed and came before the Court for hearing on October 2, 2025.

20   Having considered the briefing and the parties' arguments, the Court DENIES in part and

21   GRANTS in part Defendant's second motion for summary judgment.  The First Amendment

22   retaliation claim may proceed to trial, but qualified immunity bars the Eighth Amendment claim.

23                        **SUMMARY JUDGMENT EVIDENCE**

24         The Court incorporates its prior summary of the evidence in support of summary judgment

25   by reference as the factual record has not changed since the Court's prior Order.  (Dkt. No. 30 at

26   1-4.)

27   _____

28   [1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the document.

*United States District Court*
*Northern District of California*

1

**EVIDENTIARY OBJECTIONS**

2

Plaintiff objects to Defendant's reliance on nine exhibits which he contends were untimely

3

produced in July 2025—over 10 months after the close of fact discovery.  These include:

4

      1.  Barron Declaration, Ex. B (ECF No. 129-14);

5

      2.  Barron Declaration, Ex. C (ECF No. 129-15);

6

      3.  Mora Declaration, Ex. A (ECF No. 129-17);

7

      4.  Mora Declaration, Ex. B (ECF No. 129-18):

8

      5.  Mora Declaration, Ex. C (ECF No. 129-19);

9

      6.  Mora Declaration, Ex. D (ECF No. 129-20);

10

      7.  Mora Declaration, Ex. E (ECF No. 129-21);

11

      8.  Orozco Declaration, Ex. A (ECF No. 129-24); and

12

      9.  Orozco Declaration, Ex. B (ECF No. 129-25).

13

Plaintiff insists these documents are responsive to his December 26, 2023 discovery

14

requests as they are allegedly drafts of the February 2021 confidential memoranda at the heart of

15

his claims.  (Dkt. No. 149-14 at 9 (RFP No. 2: "All DOCUMENTS, COMMUNICATIONS, and

16

THINGS constituting and/or relating to the February 8, 2021 CONFIDENTIAL

17

MEMORANDUM, as referred to in Docket No. 22-5"; RFP No. 3: "All DOCUMENTS,

18

COMMUNICATIONS, and THINGS constituting and/or relating to the February 10, 2021

19

CONFIDENTIAL MEMORANDUM, as referred to in Docket No. 22-5.").)

20

Defendant concedes, as he must, that these late-produced documents were responsive to

21

Plaintiff's Request for Production Nos. 1 and 3, but argues Plaintiff cannot complain the

22

information was not produced earlier because he did not move to compel further responses upon

23

receipt of Defendant's objections. (Dkt. No. 161 at 6 ("At no point in the over year-and-a-half

24

since Peffley objected to these overbroad requests did Bess ever move to compel further

25

responses.  Thus, Bess cannot complain about Peffley's failure to produce the draft memoranda

26

and associated e-mails in response to these RFPs.")  Defendant's argument is not well-taken.

27

First, there were not any documents for Plaintiff to move to compel because Defendant's

28

responses did not disclose that he was withholding any documents.  *See* Fed. R. Civ. P.

United States District Court
Northern District of California

34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection"). Rather than disclose he was withholding documents, Defendant's document response states:

> Without waiving and subject to the foregoing objections, Defendant responds as follows: Defendant shall produce a duly redacted copy of the February 8, 2021 Confidential Memorandum subject to the "Attorney's Eyes Only" designation of the protective order filed and approved in this matter.

(Dkt. No. 161-2 at 4-5.) And rather than testify he was withholding documents, Defendant testified any drafts would most likely have been shredded:

> Q. What did you do with copies of drafts that you received from your officers?
>
> A. Give them right back as soon as I was done. That was my -- I -- I did not like proofing on Word doc with the highlights and the red lines and all that. That wasn't my thing. I'm old school. I liked a red pen and the actual document, and then when I was done, handed it back to them.
>
> Q. And do you know what happened with that document that you handed back to them?
>
> A. I don't. I would assume they would make the corrections on the Word doc and then shred it, but I don't.

(Dkt. No. 149-5, Peffley Depo. At 207:15-208:2; *see also* Dkt. No. 149-9, Barron Depo. at 119:16-25 ("it was printed out, and then there was handwritten notes as far as draft...then it would be shredded, and we'd start over."). So, any argument Plaintiff should have moved to compel documents that Defendant did not disclose existed, and that Defendant apparently did not know existed, is specious.

Second, Defendant's argument he immediately produced the documents pursuant to his continuing obligation once they came under his "possession, custody, and control" is inadequate. (Dkt. No. 161 at 7.) "[C]ounsel is responsible for coordinating her client's discovery efforts." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004). "[I]t is not enough for counsel to simply give instructions to his clients and count on them to fulfill their discovery obligations. The Federal Rules of Civil Procedure place an affirmative obligation on an attorney to ensure that a client search for responsive documents and information is complete." *Logtale, Ltd. v.*

*IKOR, Inc*., No. C-11-05452 CW (DMR), 2013 WL 3967750, at *2 (N.D. Cal. July 31, 2013) (citing Fed. R. Civ. P. 26(g) (requiring a signing attorney to certify that a reasonable inquiry has been made with respect to the factual and legal bases for any discovery response). Counsel had an obligation to ensure Defendant searched for responsive documents at the time the discovery requests were made. That Defendant has since obtained new counsel who conducted a proper search does not demonstrate the failure to produce this information earlier was substantially justified. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information… the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) (collecting cases awarding varying sanctions under Rule 37(c)(1) for failure to supplement or correct incomplete, misleading, or false discovery responses in violation of Rule 26(e)). And Defendant's failure to comply with his discovery obligations is not harmless as his late disclosure was made over 10 months after the close of fact discovery and on the eve of summary judgment and trial.

Accordingly, Plaintiff's objections are sustained.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden then moves to the opposing party, who must present significant probative evidence tending to support its claim." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (cleaned up). In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden*." Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id*. at 255.

United States District Court
Northern District of California

### A.    First Amendment Retaliation Claim

#### 1.    First Amendment Claim not Entirely *Heck* Barred

Defendant insists Plaintiff's First Amendment retaliation claim is barred by the favorable termination doctrine under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate the conviction or sentence has previously been invalidated. *Id*. at 486-87. The Court is unpersuaded *Heck* bars the entirety of Plaintiff's First Amendment retaliation claim.

Plaintiff alleges that in retaliation for Plaintiff's expressed intent to file a grievance, Defendant falsified memoranda placed in his file. He also alleges Defendant did so to "adversely effect [sic] him at his upcoming parole suitability hearing." (Dkt. No. 1 at 8.) This claim itself does not necessarily imply the invalidity of his confinement. "Under California law, the parole board must consider '[a]ll relevant, reliable information" in determining suitability for parole.'" *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (quoting Cal. Code Regs. tit. 15, § 2281(b)). "Because the parole board has the authority to deny parole 'on the basis of any of the grounds presently available to it,' the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." *Id*. (quoting *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)). So, a reasonable trier of fact could find Defendant placed the false memoranda in Plaintiff's file to chill his First Amendment right to file grievances without having to also find Plaintiff would have been granted parole absent the memoranda.[2] *See id.* at 934-35 (holding a habeas claim seeking expungement of a disciplinary violation should be brought as a section 1983 claim because "[s]uccess on the merits of [the inmate's] claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole").

---

[2] In light of this conclusion, the Court need not address Plaintiff's contention the *Heck* bar does not apply since he has been granted parole. As Defendant notes, Plaintiff's parole is not final and will not be final until December 25, 2025 (120 days from his August 27, 2025 grant of parole). (Dkt. No. 149 at 8, n.2.)

But, as noted at oral argument, *Heck* bars Plaintiff from recovering any damages stemming from the prior denial of parole.  To award such damages would necessarily imply the unlawfulness of his confinement after that decision.  *See Butterfield v. Bail*, 120 F.3d 1023, 1024–25 (9th Cir. 1997) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole."); *Howard v. Selling*, 399 F. App'x 205, 206 (9th Cir. 2010) (holding the district court properly dismissed the action because the plaintiff's claim that he was denied institutional parole is *Heck*-barred); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1098 (9th Cir. 2004) (holding a challenge to parole denial based upon parole board deceit and bias is barred by *Heck* because it implies the invalidity of the inmates' confinement); *see also Wilson v. Stowers,* No. CV-21-06306 DOC (DFM), 2022 WL 21769113, at *1 (C.D. Cal. Dec. 14, 2022) (holding the plaintiff's claim "that various prison officials violated his constitutional rights when they relied on the false RVRs to find him unsuitable for parole" *Heck*-barred).  As Plaintiff could still recover at least nominal damages, *see Estate of Macias v. Ihde,* 219 F.3d 1018, 1028 (9th Cir. 2000), the unavailability of damages resulting from the denial of parole does not defeat Plaintiff's First Amendment claim in its entirety.

### 2.    Genuine Disputes of Fact as to the Retaliation Claim

In the prison context, a First Amendment retaliation claim requires: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Defendant does not appear to dispute Plaintiff has offered sufficient evidence of an adverse action.  Nor could he.  As the Court found in the prior summary judgment Order:

> Plaintiff's declaration supports a finding Defendant threatened to spread information that Plaintiff was a snitch among the prison population, validate him as an STG member, and put false confidential memoranda in Plaintiff's central file that Plaintiff was involved in STG activity to prevent Plaintiff from being granted parole. (ECF No. 25-3 at 148.) These threats, each on their own, support a finding of an adverse action under *Shephard* [v. *Quillen*, 840 F.3d 686, 688-90, 691 (9th Cir. 2016)] sufficient to support a retaliation claim.

(Dkt. No. 30 at 9.)

Instead, Defendant insists Plaintiff has not offered sufficient evidence of causation. To establish causation, Plaintiff must show the prison official intended to, and did take, the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *See Shephard*, 840 F.3d at 689-91 (finding genuine issue of material fact as to whether defendant sent inmate to ad seg to (1) follow a prison regulation regarding inmate safety or (2) retaliate for inmate's complaint about staff misconduct). "Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, prison official's expressed opposition to the speech, and prison official's proffered reason for the adverse action was false or pretextual." *Oliver v. Perez-Pantoja*, No. 5:19-CV-07957 EJD, 2023 WL 12033407, at *5 (N.D. Cal. Mar. 24, 2023) (citing *Shephard*, 840 F.3d at 690). Disputes of fact, including whether Defendant threatened to put information in Plaintiff's file validating him as a SGT member in response to Plaintiff's threat to file an administrative grievance and whether Defendant was involved in putting the memoranda in Plaintiff's file—especially given the temporal proximity between the threats and the memoranda appearing in Plaintiff's file—preclude summary judgment on the question of causation.[3]

Finally, whether Defendant's conduct had a chilling effect on Plaintiff's speech is a question for the jury. "[A] chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). A reasonable factfinder could conclude Plaintiff's willingness to file to a grievance was chilled by Defendant's threat. (Dkt. No. 149-6, Bess Depo. at 114:16-115:21 (testifying he "was

---

[3] It is well-established "proximity in time may support an inference of retaliation sufficient to survive summary judgment." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010). Defendant's arguments to the contrary and the cases on which he relies are inapposite. (Dkt. Not. 129 at 26-27 (citing *Taylor v. Ingram*, No. 2:21-01042 TLN SCR P, 2025 WL 1411550, at *10 (E.D. Cal. May 15, 2025), report and recommendation adopted, No. 2:21-CV-01042-TLN-SCR, 2025 WL 1865964 (E.D. Cal. July 7, 2025) ("without evidence linking defendant to the subsequent transfer, its temporal proximity to plaintiff's protected conduct alone is not sufficient to create a triable issue of fact."); *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (finding no nexus where the adverse action took place six or seven months after the statements at issue). Here, the confidential memoranda appeared in Plaintiff's file within four and six days, respectively, of his verbal exchange with Defendant. (Dkt. No. No. 1 at 21; 25-3 at 148.)

1    reluctant to write a 602" because of Defendant's threat).)

2                **3.**      **No Qualified Immunity**

3       "The doctrine of qualified immunity shields officials from civil liability so long as their

4    conduct 'does not violate clearly established statutory or constitutional rights of which a

5    reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam).

6    Because Defendant has not shown as a matter of law that he did not violate Plaintiff's First

7    Amendment right, the dispositive question is whether Plaintiff's First Amendment right was

8    clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

9       As a thresholder matter, Defendant misconstrues Plaintiff's claim. Defendant suggests the

10   question is whether there was clearly established law that "would have put Peffley on notice that

11   his failure to correct the memoranda would violate Bess's First Amendment rights." (Dkt. No.

12   129 at 30.) But that is not Plaintiff's claim—the claim is that Defendant violated Plaintiff's First

13   Amendment rights when in retaliation for Plaintiff's stated intention to file an administrative

14   grievance Defendant threatened to validate Plaintiff as a gang member and caused the false

15   memoranda to be placed in Plaintiff's file. "[T]he law clearly establishe[s] that defendants cannot

16   [take adverse action to] punish the prisoner for exercising his First Amendment right to pursue

17   civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995);

18   *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("threats to sue fall within the purview of

19   the constitutionally protected right to file grievances."). Accordingly, Defendant has not

20   established he is entitled to qualified immunity on Plaintiff's First Amendment claim.

21                                         \*\*\*

22       In sum, Defendant's motion for summary judgment of Plaintiff's First Amendment

23   retaliation claim is GRANTED to the extent he seeks damages based on a theory the placement of

24   the false memoranda caused the denial of parole, but is otherwise DENIED.

25           **B.**      **Eighth Amendment Claim**

26       The Court previously concluded Defendant was not entitled to qualified immunity on

27   Plaintiff's Eighth Amendment claim. (Dkt. No. 30 at 12-16.) Defendant's second motion for

28   summary judgment makes similar arguments to those the Court previously rejected and argues the

1    Court erred in relying on *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226 (9th Cir. 2014).

2    Essentially, Defendant improperly seeks reconsideration of the Court's prior Order. *See* Civ. L.R.

3    7-9 (stating the "moving party must specifically show *reasonable diligence* in bringing the

4    motion" and either there is now "a material difference in fact or law exists from that which was

5    presented to the Court," or the "emergence of new material facts or a change of law occurring after

6    the time of such order" or "[a] manifest failure by the Court to consider material facts or

7    dispositive legal arguments which were presented to the Court before such interlocutory order.")

8    (emphasis added).  Defendant inexplicably waited two years to argue the Court's order should be

9    reconsidered and thus has not shown reasonable diligence.  And, he has also not shown any

10   changed circumstances that would warrant reconsideration.

11         But, "the law of the case doctrine" "is a guide to the exercise of the [the Court's]

12   discretion." *Arizona v. California*, 46 U.S. 605, 618 (1983); *see also Ingle v. Cir. City*, 408 F.3d

13   592, 594 (9th Cir. 2005) (noting the law of case doctrine is discretionary).  Despite having denied

14   Defendant summary judgment of qualified immunity, after the evidence is presented at trial the

15   Court would have to grant Defendant judgment on the Eighth Amendment claim if qualified

16   immunity bars the claim. So, the Court in its discretion finds it makes sense to review now

17   whether drawing all reasonable inferences from the facts in Plaintiff's favor qualified immunity

18   applies.

19         Plaintiff's Eighth Amendment claim is that "Defendant tried to force Plaintiff into the

20   dangerous position of being a snitch by threatening Plaintiff if he refused."  (Dkt. No. 30 at 13.)

21   His theory is that agreeing to snitch would place him at risk of violence from other inmates.  "The

22   failure of prison officials to protect inmates from attacks by other inmates may rise to the level of

23   an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently

24   serious" and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with

25   deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting

26   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  But here, Plaintiff did not agree to snitch and was

27   not attacked by other inmates; so, to defeat qualified immunity he must show the law was clearly

28   established that merely threatening an inmate to become a snitch rises to the level of an Eighth

United States District Court
Northern District of California

9

1   Amendment violation.

2          The Court previously relied on *Gonzalez v. CDCR*, 739 F.3d 1226, 1235 (9th Cir. 2014), to

3   conclude the law was clearly established that the threat itself violates the Eighth Amendment.  The

4   Court reasoned:

5               In *Gonzalez*, the Ninth Circuit concluded the alleged risk from
            snitching sufficiently materialized under the Eighth Amendment
6           when prison officials applied pressure upon the prisoner-plaintiff to
            become a snitch via California's prisoner debriefing procedures. The
7           plaintiff claimed the debriefing procedures in which a prisoner could
            either inform on gang members or remain in indeterminate
8           segregation violated the Eighth Amendment. The court concluded the
            plaintiff had standing to bring an Eighth Amendment claim, which
9           requires showing injury-in-fact. Although the plaintiff had not
            snitched, officials had not labeled him a snitch, and other inmates had
10          not threatened him for snitching, the court concluded his
            circumstances, in which prison procedures pressured him to become
11          a snitch, sufficiently materialized a risk of harm to him that he had an
            injury-in-fact sufficient to have standing to make and Eighth
12          Amendment claim.

13  (Dkt. No. 30 at 13-14.)  The Court concluded: "*Gonzalez* clearly established five years before

14  Defendant's alleged conduct in this case that applying such pressure constitutes deliberate

15  indifference to a substantial risk of serious harm to a prisoner within the meaning of the Eighth

16  Amendment."  (*Id.* at 14.)  But as Defendant emphasizes, *Gonzalez* did not hold such conduct

17  violated the Eighth Amendment; instead, *Gonzalez* only addressed injury-in-fact for purposes of

18  Article III standing—a different and lesser standard.  It therefore did not give officers "fair

19  warning" such conduct is unconstitutional under the Eighth Amendment. *See Ellins v. City of*

20  *Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("A right is clearly established if the state of

21  the law at the time of the adverse action gave the officers fair warning that their conduct was

22  unconstitutional").  *Gonzalez* is not clearly established law supporting an Eighth Amendment

23  violation here.

24          Plaintiff's reliance on *Valandingham v. Bojorquez*, 866 F.2d 1137 (9th Cir. 1989), is

25  unavailing.  *Valandingham* involved an allegation prison officials labelled the plaintiff a snitch in

26  retaliation for the plaintiff having filed grievances. *Id.* at 1138. It did not even include an Eighth

27  Amendment claim and so does not clearly establish that threatening an inmate to become a snitch

28  rises to the level of an Eighth Amendment violation.

United States District Court
Northern District of California

1    As Plaintiff has not met his burden of demonstrating the law clearly establishes an officer

2    violates the Eighth Amendment by threatening an inmate to become a snitch, summary judgment

3    must be granted in Defendant's favor.  *See Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118

4    (9th Cir. 2017) ("the plaintiff []bears the burden of showing that the rights allegedly violated were

5    clearly established.") (cleaned up).

6                                              **CONCLUSION**

7    For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART

8    Defendant's motion for summary judgment.  Summary judgment is GRANTED on Plaintiff's First

9    Amendment retaliation claim to the extent Plaintiff seeks damages stemming from the prior parole

10   denial, but is otherwise DENIED, and is GRANTED as to his Eighth Amendment claim on

11   qualified immunity grounds.

12   Defendant's administrative motion to seal at Docket No. 130 is GRANTED.  Plaintiff's

13   administrative motion to seal at Docket No. 148 is DENIED as Defendant, the designating party,

14   did not submit a declaration in support of sealing.  *See* Civ. L.R. 79-5(f)(3).

15   The Courts set a status conference for January 14, 2026 at 2:00 p.m. by a Zoom

16   videoconference. The parties shall provide a joint status update by January 8, 2026 regarding the

17   status of Plaintiff's parole as well as whether, in light of this Order, damages need not be

18   bifurcated.

19   This Order disposes of Docket Nos. 129, 130, and 148.

20   **IT IS SO ORDERED.**

21   Dated: November 13, 2025

22

23   _____
     JACQUELINE SCOTT CORLEY
     United States District Judge

24

25

26

27

28

United States District Court
Northern District of California